## S97A0300. HALL v. THE STATE.
### (485 SE2d 755)

SEARS, Justice.

Appellant Rosalind Hall sought an interlocutory appeal from the trial court's denial of her motion to quash the accusations against her alleging three separate counts of violating the Georgia Reckless Conduct Statute.[1] We granted Hall's application in order to examine the constitutionality of the Statute, as it is applied in this case. We find that the Statute, as applied, both (1) failed to provide persons of ordinary intelligence with notice that it purports to prohibit certain conduct; and (2) lacks definite and explicit standards to guide its enforcement, thereby making it susceptible to arbitrary and selective enforcement by police, prosecutors, and juries. For these reasons, we find that the Statute violates the due process rights guaranteed by our State and Federal Constitutions, and we reverse.

Because this matter is being reviewed following the trial court's denial of appellant Hall's motion to quash the accusations against her, the underlying facts have not yet been fully developed. The State represents to this Court, however, that it expects to support its accusations against Hall with evidence showing that:

> Appellant and [her boyfriend] left their home for approximately four (4) hours in the early to late evening, perhaps longer. The three subject children [ages five, three, and one years old] were left at home in the care of . . . Appellant's eleven year [and nine month] old son, who did not regularly reside with his mother. Felix Majors III [the three year old child] died of a severe head injury during the period of adult absence.[2]

---

[1] OCGA § 16-5-60 (1996).

[2] Relying upon *United States v. Nat. Dairy Products Corp.*, 372 U. S. 29 (83 SC 594, 9 LE2d 561) (1963), the dissent urges that in considering Hall's vagueness challenge, we are limited to the allegations of fact appearing in the indictment. The *Nat. Dairy* opinion, however, states clearly that in cases such as this one, the statutory vagueness challenge is to be examined "in . . . light of the *conduct* to which it is applied." (Emphasis supplied.) 372 U. S. at 36. In applying this precedent here, we refer only to those few facts, uncontested by Hall, that are put forth by the State in support of its accusations that by her conduct, Hall violated OCGA § 16-5-60. Furthermore, we note that the accusations in this case set forth no factual allegations, but rather contain only conclusions. Thus, were we to follow the dissent's logic, we would be precluded from considering Hall's vagueness challenge. Furthermore,

On appeal, Hall does not substantively contest the State's factual allegations.

At the outset, we note that the State does not expect to show that the eleven-year and nine-month-old boy left to supervise the younger children possessed any unusual or dangerous character traits that might have tended to create a substantial risk of harm to the younger children, and no proceedings have been brought against the boy. Nor does the State contend that any foul play or malice contributed to the three-year-old's death. Rather, the State contends that Hall's act of placing the boy, who was nearly twelve years old, in a supervisory role over three younger children, without more, violated the Reckless Conduct Statute.

The State filed three accusations against Hall, one for each of the three younger children left in the care of her eleven-year and nine-month-old son. The accusations — each virtually identical in form — accused Hall of violating Georgia's Reckless Conduct Statute, OCGA § 16-5-60, by:

> endanger[ing] the bodily safety of another person, to-wit, [the child], by leaving him without proper supervision, consciously disregarding a substantial and unjustifiable risk, which would cause harm or endanger the safety of [the child], and which disregard constitutes a gross deviation from a standard of care which a reasonable person would exercise in the situation.

Hall filed a timely motion to quash the accusations, asserting that (1) at the time the children were left alone, the deceased three-year-old was not in Hall's care and thus she could not be charged with violating a legal duty owed to that child, and (2) OCGA § 16-5-60, as applied to Hall in the accusations, failed to provide her with proper notice of what conduct was prohibited and thus denied Hall due process and equal protection under the law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section I, Paragraph II of the Georgia Constitution. The trial court denied Hall's motion to quash, and issued a certificate of immediate review. We granted Hall an interlocutory appeal in order to review the trial court's ruling, and for the reasons explained below, we reverse.

1. The Georgia Reckless Conduct Statute provides that:

> A person who causes bodily harm to or endangers the bodily

---

under the dissent's reasoning, the State could avoid all vagueness challenges simply by withholding allegations of fact from its indictments.

safety of another person by consciously disregarding a substantial or unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.[3]

In *Horowitz v. State*,[4] we ruled that the Reckless Conduct Statute was sufficiently definite to give a person of ordinary intelligence notice that, by driving a sports car recklessly through a residential neighborhood at excessive speeds so as to lose control of the car, skid more than 60 feet, and hit a child standing in a front yard, he was engaging in activity that violates the Statute.

The parties disagree as to the impact of *Horowitz* on this appeal. Hall claims that in *Horowitz*, we merely ruled that the Reckless Conduct Statute is not susceptible to a facial attack on vagueness grounds, and thus that opinion does not control our decision in this case. The State, on the other hand, urges us to read *Horowitz* as upholding the Statute against all vagueness challenges. While neither party is entirely correct, we determine that *Horowitz* is not controlling in this matter. " ' "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms [such as the challenges raised in this case and in *Horowitz*] must be examined in light of the facts of the case at hand." ' "[5] Thus, our ruling in *Horowitz* was limited to the facts then appearing, and our decision in this case shall be limited to the application of the Statute "in light of the conduct to which it is applied."[6]

2. In this case, the State charges that when Hall placed the younger children in the care of her older son, she left them "without proper supervision," thereby violating the Statute's prohibition against causing harm to another by "consciously disregarding a substantial and unjustifiable risk [of such] harm or endanger[ing] the safety of another . . . in gross deviation from the standard of care which a reasonable person would exercise in the situation."[7] On appeal, Hall argues that the Statute failed to provide her with fair notice that it prohibits such conduct, and that it therefore violates the Due Process Clauses of our State and Federal Constitutions.

In response to Hall's vagueness as applied challenge, the State argues that because the mental state of "conscious disregard" is a

---

[3] OCGA § 16-5-60 (b) (1996).

[4] 243 Ga. 441 (254 SE2d 828) (1979).

[5] *Hubbard v. State*, 256 Ga. 637 (352 SE2d 383) (1987) (Clarke, J., concurring) (quoting *United States v. Mazurie*, 419 U. S. 544, 550 (95 SC 710, 42 LE2d 706) (1975)).

[6] *United States v. Nat. Dairy Products Corp.*, 372 U. S. at 36.

[7] OCGA § 16-5-60 (b).

necessary element of the Reckless Conduct Statute, any person with charge of a child, who "consciously disregards" their supervisory responsibilities to that child is on notice that if actual harm, or a substantial risk thereof, follows from their conduct, they may have violated the Statute. In short, the State's position is that anytime one's mental state can be deemed to "consciously disregard" a substantial or unjustifiable risk, she is on notice that she might violate the Statute's prohibitions. According to the State, the requisite fair notice is provided by the individual's own mental state of "conscious disregard." In making this argument, the State urges that the term "proper supervision," as used in the accusations, is irrelevant in determining whether the Statute provided Hall with fair notice of what conduct it proscribes.

We disagree with the State's argument, primarily for two reasons. First, "[t]he principle that due process requires that criminal statutes give sufficient warning to enable [individuals] to conform their conduct to avoid that which is forbidden is one of the great bulwarks of constitutional liberty."[8] This Court and the United States Supreme Court have consistently equated the "sufficient warning" of prohibited conduct required of criminal statutes to the provision of "fair notice" that by engaging in such conduct, one will be held criminally responsible.[9] Of course, every mere uncertainty as to a statute's applicability will not render it void for vagueness.[10] However, it is beyond question that the Due Process Clause requires that the law give a person of ordinary intelligence fair warning that her specific contemplated conduct is forbidden, so that she may conduct herself accordingly.[11] "All persons are entitled to be informed as to what the State commands or forbids."[12]

Bearing these principles in mind, and applying them to the facts of this case, we cannot say that the Reckless Conduct Statute provided Hall with fair notice that she could be held criminally responsible for leaving the three children in the care of her son. Ordinary intelligence does not dictate that a statute forbidding the conscious disregard of a substantial risk necessarily encompasses a prohibition against leaving young children in the care of an older child who is

---

[8] *Rose v. Locke*, 423 U. S. 48, 59 (96 SC 243, 46 LE2d 185) (1975) (Brennan, J., dissenting).

[9] *Roemhild v. State*, 251 Ga. 569, 572 (308 SE2d 154) (1983). See *Rose*, 423 U. S. at 49-50; *Papachristou v. City of Jacksonville*, 405 U. S. 156, 162 (92 SC 839, 31 LE2d 110) (1972); *Grayned v. City of Rockford*, 408 U. S. 104, 108 (92 SC 2294, 33 LE2d 222) (1972); *Sabel v. State*, 250 Ga. 640 (300 SE2d 663) (1983).

[10] See *Rose*, 423 U. S. at 50

[11] Id.; *Hubbard*, 256 Ga. at 637; *United States v. Harris*, 347 U. S. 612, 617 (74 SC 808, 98 LE 989) (1954).

[12] *Lanzetta v. New Jersey*, 306 U. S. 451, 453 (59 SC 618, 83 LE 888) (1939).

almost 12 years old. In fact, upon examination, it becomes clear that the Statute "forbids no specific or definite act," and fails to "fix . . . an ascertainable standard of guilt,"[13] thereby indicating that it is impermissibly vague.[14]

The State's argument that the required notice of a prohibition against certain conduct is satisfied by the mens rea element of "conscious disregard" set forth in the Statute is entirely unpersuasive. Under the precedent discussed above, the State's argument could only make sense if the Statute was purported to prohibit a mental state of "conscious disregard" — which, of course, it does not. As it is, the Statute failed to provide Hall with fair notice that she could be held criminally responsible for leaving the children in the care of her older son, and therefore it failed to "clearly define" its prohibitions, rendering it unconstitutionally vague.

The dissent takes strong issue with this assessment of the statute. However, we also find the Statute, as applied, is unconstitutionally vague for a second, and more compelling, reason — a reason not fully considered by the dissent. The Statute also violates the prohibition against vague laws because it fails to provide explicit standards for those who would apply it, and thus is susceptible to arbitrary and selective enforcement.[15] Criminal statutes must set forth sufficiently definite standards for those responsible for their enforcement "so that basic policy matters are not impermissibly delegated 'to policemen, judges, and juries for resolution on an ad hoc and subjective basis [].' "[16] The Due Process Clause prohibits statutes that, by avoiding the requisite definite standards, " 'allow the net to be cast at large, to allow men to be caught who are vaguely undesirable in the eyes of police and prosecution.' "[17]

The Reckless Conduct Statute, as applied in this case, suffers from these very infirmities. The Statute lacked definite and explicit standards to guide its enforcement against Hall. This is shown quite obviously by the State's argument, discussed above, that the mens rea element of the Statute forewarns individuals that certain action or inaction might give rise to a "substantial and unjustifiable risk" and lead to prosecution. Yet the statute altogether failed to indicate that the purported risk taken by Hall was "substantial and unjustifiable," and thus prohibited. That determination was made by law enforcement officials only after the unfortunate death of the three-

---

[13] *United States v. L. Cohen Grocery Co.*, 255 U. S. 81, 89 (41 SC 298, 65 LE 516) (1921).

[14] See id.

[15] See *Grayned*, 408 U. S. at 108-109; *Papachristou*, 405 U. S. at 166-167; *Roemhild*, 251 Ga. at 572.

[16] *Roemhild*, supra at 572 (quoting *Grayned*, 408 U. S. at 109).

[17] *Papachristou*, 405 U. S. at 166 (quoting *Winters v. New York*, 333 U. S. 507, 540 (68 SC 665, 92 LE 840) (1948)).

year-old, and necessarily was based upon the officials' own predilections and standards. Thus, the determination of whether Hall took a "substantial and unjustified" risk was entirely dependent upon the consequences that flowed from her actions, and law enforcement officials' view of those consequences. It is axiomatic that criminal statutes proscribe conduct, not the results that flow from conduct. As observed by the United States Supreme Court when declaring a federal statute unconstitutionally vague:

> [An] attempt to enforce the [Statute] would be the exact equivalent of an effort to . . . penalize[ ] and punish[ ] all acts detrimental to the public interest when unjust or unreasonable in the estimation of the court and jury. . . . [The Statute] leaves open . . . the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against.[18]

As applied in this case, the Statute's lack of definiteness about what risks are "substantial and unjustifiable" enabled law enforcement officials to "cast a wide net,"[19] and ensnare an individual whose actions were deemed to be unjust and unreasonable only when viewed in retrospect.

The Statute's susceptibility to arbitrary enforcement is most obvious when it is considered in relation to other similar factual scenarios. For example, had Hall left the three younger children in the care of the 12-year-old without incident, it can safely be presumed that the State would not contend that Hall took a risk that was substantial and not justified. This is shown by the State's failure to contend that the Statute is violated by the many parents who on a daily basis, often due to necessity, leave an older child to care for their younger siblings while the parents work or attend to other business. Similarly, if Hall had left the three-year-old in the care of an experienced child care professional with an unblemished record, and while playing with other children in that professional's care, the three-year-old suffered the same unintentional, yet fatal, injuries, the State could not seriously contend that Hall took an ill-advised risk. This is shown by the fact that thousands of children in this State are left in day care by their working parents, and sometimes those children are injured while playing with other children. Yet those parents are not deemed to have taken a "substantial and unjustifiable risk" in violation of the Reckless Conduct Statute.

---

[18] *Cohen*, 255 U. S. at 89.

[19] *Papachristou*, supra.

In this case, however, the Statute's vague and indefinite language permitted law enforcement officials, when faced with the tragic consequence of the child's death, to selectively and arbitrarily prosecute Hall. That decision can only have been based upon the officials' post-hoc, subjective, and arbitrary analysis, rather than any clear and definite guidelines set forth in the Statute. As explained above, any statute that impermissibly delegates such basic matters of policy and law-making to law enforcement officials for their subjective and ad hoc analysis violates the due process guarantees of our State and Federal Constitutions.

In conclusion, the Reckless Conduct Statute, OCGA § 16-5-60, as applied in this case, both (1) failed to provide persons of ordinary intelligence with notice that it purports to prohibit leaving children in the care of an older sibling; and (2) is vaguely worded so as to encourage arbitrary and selective enforcement by police, prosecutors, and juries, acting on an ad hoc basis. Therefore, we find that the Statute violates the due process rights guaranteed by our State and Federal Constitutions, and that the trial court erred in denying Hall's motion to quash the accusations against her alleging that she violated the Statute.

*Judgment reversed. All the Justices concur, except Hunstein, Carley and Thompson, JJ., who dissent.*

CARLEY, Justice, dissenting.

> Great cases like hard cases make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment.

*Northern Securities Co. v. United States*, 193 U. S. 197, 400 (24 SC 436, 48 LE 679) (1904) (Holmes, J., dissenting). I think that those words clearly apply to the case at bar. I further submit that the majority opinion also demonstrates that, on occasion, empathy and a faulty prognosis of dire results can cause courts to abandon judicial restraint and perform major legal surgery instead of allowing the traditional jurisprudential course of treatment to cure any ill that may exist. At this stage, the State has yet to bring Rosalind Hall to trial on the accusations charging her with reckless conduct. The only issue presented for resolution in this interlocutory appeal is whether the statute which underlies the pending prosecution against Ms. Hall is unconstitutionally vague. Concluding that the reckless conduct statute is unconstitutionally vague as applied to Ms. Hall, the majority reverses the trial court's denial of the motion to quash the accusa-

tions charging her with that crime. Although I am as sympathetic as is the majority with regard to the plight of those parents who must leave their children in the care of others, I cannot agree that the statute which Ms. Hall is charged with violating is unconstitutional as applied to her. Accordingly, I must respectfully dissent.

A finding of vagueness means that no criminal responsibility attaches because the defendant could not reasonably understand that his or her contemplated conduct was proscribed under the terms employed in the challenged statute. *Douglas v. State*, 263 Ga. 748, 749 (2) (438 SE2d 361) (1994). In determining the sufficiency of the notice, the challenged "statute must of necessity be examined in the light of the conduct with which a defendant is charged. [Cit.]" *United States v. Nat. Dairy Products Corp.*, 372 U. S. 29, 33 (II) (83 SC 594, 9 LE2d 561) (1963). Ms. Hall is charged with violating OCGA § 16-5-60 (b), which provides generally that

> [a] person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

Under the specific allegations of the accusations, Ms. Hall is charged with violating this statute by leaving the children "without proper supervision." It is not necessary that the words "without proper supervision" which appear in the accusations also appear in OCGA § 16-5-60 (b) in order for the statute to pass constitutional muster. For a law to withstand a vagueness challenge, the federal and state constitutions require only that the statutory provision convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding and provide explicit standards to prevent arbitrary enforcement. *Douglas v. State*, supra at 749 (2). Accordingly, the sole issue in this appeal is whether the terms employed in OCGA § 16-5-60 (b) to proscribe "reckless conduct" are sufficiently definite to encompass the act of leaving a child "without proper supervision" and to prevent arbitrary enforcement of the statutory mandate in that regard.

"Conduct," as commonly understood, is a broad concept which includes "[p]ersonal behavior; deportment; mode of action; any positive or negative act." Black's Law Dictionary (5th ed. 1979). It is this broad definition which is applicable here, because, in the context of OCGA § 16-5-60 (b), "conduct" means an "act or omission" without any limitation or qualification whatsoever. Thus, any "act or omis-

sion" undertaken in connection with the supervision of a child is within the ambit of "conduct" covered by OCGA § 16-5-60 (b). "For conduct to be reckless, it must be such as to evince disregard of, or indifference to, consequences, under circumstances involving danger to life or safety of others, although no harm was intended." Black's Law Dictionary (5th ed. 1979). Consistent with this definition, OCGA § 16-5-60 (b) clearly provides that the proscribed reckless conduct is that which is undertaken with a conscious disregard for a substantial and unjustifiable risk of harm or endangerment to another and which constitutes a gross deviation from the standard of care a reasonable person would have exercised.

It follows that the terms contained in OCGA § 16-5-60 (b), as commonly understood, are sufficiently definite to criminalize, as "reckless conduct," an act of leaving a child "without proper supervision" which was undertaken with a conscious disregard for a substantial and unjustifiable risk of harm or endangerment to the child amounting to a gross deviation from the standard of care a reasonable person would have exercised. See *Wilson v. State*, 245 Ga. 49, 51 (1) (262 SE2d 810) (1980) (upholding the constitutionality of the predecessor "reckless driving" statute); *Horowitz v. State*, 243 Ga. 441 (254 SE2d 828) (1979) (upholding the constitutionality of the predecessor "reckless conduct" statute). Any person of common intelligence can determine whether a contemplated supervisory act or omission is "reckless," as constituting a substantial and unjustified risk of harm or endangerment to a child and a gross deviation from reasonable care. See *Watson v. State*, 192 Ga. 679 (2) (16 SE2d 426) (1941).

It is urged that OCGA § 16-5-60 (b) nevertheless is unconstitutional because it fosters arbitrary law enforcement. By its terms, however, the statute is limited to "conduct" which is "reckless," and "reckless" is further defined so as to limit the scope of the conduct which is made criminal. The General Assembly is not required to define every word in a criminal statute and, so long as a criminal statute provides a fair warning to the public and to law enforcement officers as to what actions are proscribed, there is no constitutional infirmity. See *Land v. State*, 262 Ga. 898, 899 (1) (426 SE2d 370) (1993). OCGA § 16-5-60 (b) is not unconstitutional simply because it permits an officer to make an assessment of the surrounding circumstances before arresting a person for "reckless conduct." See *State v. Miller*, 260 Ga. 669, 673 (2) (398 SE2d 547) (1990). Compare *Daniels v. State*, 264 Ga. 460 (2) (448 SE2d 185) (1994). While "reckless conduct" may have any number of definitions, the statute narrows the construction of this concept by making it clear that the proscribed conduct must be such as causes harm to or endangers the bodily safety of another through the conscious disregard of a substantial

and unjustifiable risk which constitutes a gross deviation from the standard of care that a reasonable person would exercise. *Bell v. State*, 252 Ga. 267, 271 (1) (313 SE2d 678) (1984). If, drawing upon his or her professional experience, an arresting officer concludes that a suspect has committed "reckless conduct" as thus defined, it is then a matter for the trier of fact to determine whether, under all of the circumstances revealed by the evidence, the suspect's conduct was indeed "reckless." See *Bell v. State*, supra at 271 (1). The fact that Ms. Hall was arrested and is being prosecuted for "reckless conduct," whereas others who have left children under the supervision of others with tragic consequences have not been arrested and prosecuted, is not proof that the statute is susceptible to arbitrary enforcement. Presumably, Ms. Hall was not charged with violating OCGA § 16-5-60 (b) *only* because one of the children died while under the supervision of the 12-year-old to whom she entrusted them. Ms. Hall apparently was arrested and is being prosecuted because one of the children died during the period of such entrustment *and* the arresting officer and solicitor had sufficient probable cause to believe that Ms. Hall's act of entrusting the children was, under the circumstances, a violation of OCGA § 16-5-60 (b). Because leaving a child "without proper supervision" in such conscious disregard for the bodily safety of the child as to constitute a gross departure from the standard of care a reasonable person would exercise is conduct which clearly comes within the language of OCGA § 16-5-60 (b), that statute provides sufficiently explicit standards so that judges and juries may fairly administer the law. "The Constitution requires no more." *Douglas v. State*, supra at 750 (3).

By this dissent, I do not intend to suggest that Ms. Hall is guilty of violating OCGA § 16-5-60 (b). No evidence has yet been presented to support the allegations that Ms. Hall's "conduct" in leaving the children "without proper supervision" was "reckless." This is because the constitutional challenge to OCGA § 16-5-60 (b) arises in the context of Ms. Hall's pre-trial motion to quash the accusations. Compare *United States v. Mazurie*, 419 U. S. 544 (95 SC 710, 42 LE2d 706) (1975); *Hubbard v. State*, 256 Ga. 637 (352 SE2d 383) (1987); *Horowitz v. State*, supra. Despite the fact that Ms. Hall brings a pretrial constitutional challenge, the majority bases its holding upon such purported evidence as it contends the State plans to use to prove the case against Ms. Hall upon the trial of the case. In my opinion, the majority's consideration of any "conduct" other than that attributed to Ms. Hall in the accusations constitutes the fundamental error in its analysis.

In the first instance, I find nothing in the record to support the majority's assertion that the State has made a representation to this Court regarding the evidence of Ms. Hall's "conduct" that it expects to

offer in support of the allegations of the accusations. In any event, the State has made no admission in judicio that the "few facts" recited by the majority constitutes the entirety of the evidence of Ms. Hall's conduct which will be produced at the trial of the case. More importantly, however, the majority's reliance upon evidence of Ms. Hall's "conduct" other than that attributed to her in the accusations ignores the mandate of *United States v. Nat. Dairy Products Corp.*, supra at 33 (II), fn. 2 and 37 (IV), wherein the Supreme Court of the United States held that, in addressing a pre-trial constitutional challenge on the ground of vagueness, an appellate court is "required to accept well-pleaded allegations of the indictment as the hypothesis for decision" and is, therefore, "bound by the well-pleaded allegations of the indictment. . . ." In accordance with this authority, I believe that, for purposes of reviewing Ms. Hall's pre-trial challenge to the constitutionality of OCGA § 16-5-60 (b) as applied to her, we must assume that the allegations of the indictment are true and we cannot consider any additional facts which may be shown at trial. *United States v. Bohonus*, 628 F2d 1167, 1169, fn. 2 (9th Cir. 1980). See also *United States v. Mussry*, 726 F2d 1448, 1454-1455 (9th Cir. 1984).

Contrary to the majority, following the mandate of *United States v. Nat. Dairy Products Corp.* will not allow the State to "avoid all vagueness challenges simply by withholding allegations of fact from its indictments." The mandate of that case is simply that an appellate court must determine a pre-trial constitutional challenge on the ground of vagueness on the basis of the allegations of the indictment or accusation and not on the basis of the evidence which will be produced at trial in support of those allegations. Ms. Hall otherwise was free to challenge the sufficiency of the factual allegations of the accusations by filing demurrers. See *State v. Shepherd Constr. Co.*, 248 Ga. 1, 3 (I) (b) (281 SE2d 151) (1981). However, she did not do so and filed only a pre-trial challenge to the constitutionality of the "reckless conduct" statute as applied to her. Where, as here, the defendant does not contest the sufficiency of the factual allegations of the underlying accusations, but contests only the pre-trial constitutional vagueness of the predicate statute, I believe that the issue can and should be resolved only on the basis of the unchallenged allegations of the criminal "conduct" contained in the accusations.

Certainly, if the State cannot present evidence at trial to prove the allegation that Ms. Hall's "conduct" in leaving the children "without proper supervision" was "reckless," she should not be convicted of violating OCGA § 16-5-60 (b). However, nothing in the record before us forecloses the possibility that the State can introduce evidence at trial proving that Ms. Hall's "conduct" in this regard was "reckless." Contrary to the import of the majority opinion, I know of no authority which compels the State to disclose all of its evidence when defending

against a pre-trial challenge to the constitutionality of the statute with which the defendant is charged with violating. See *United States v. Nat. Dairy Products Corp.*, supra at 37 (IV); *United States v. Mussry*, supra; *United States v. Bohonus*, supra. Here, unlike in *United States v. Mazurie*, supra at 550 (II), the "facts of the case at hand" necessarily are limited to the terms of OCGA § 16-5-60 (b) and the accusations alleging that Ms. Hall violated that statute. Compare *Hubbard v. State*, supra; *Horowitz v. State*, supra. Should the State obtain convictions of Ms. Hall for violating OCGA § 16-5-60 (b) based solely upon proof that she left the children with a 12-year-old, then those convictions cannot stand. If, however, the State can prove that, by leaving the children with this particular 12-year-old, Ms. Hall disregarded a substantial and unjustifiable risk of harm to the children and that this constituted a gross deviation from the standard of care which a reasonable person would have exercised, her convictions for violating OCGA § 16-5-60 (b) would be authorized. The only issue currently before us is whether OCGA § 16-5-60 (b) is so vague that due process prohibits the State from even attempting to prove that Ms. Hall's alleged act of leaving the children "without proper supervision" was "reckless conduct." In my opinion, OCGA § 16-5-60 (b) is not unconstitutionally vague and the sufficiency of the evidence to prove the allegations of the accusations against Ms. Hall must await a trial on the merits. Accordingly, I respectfully dissent.

I am authorized to state that Justice Hunstein and Justice Thompson join in this dissent.

DECIDED MAY 12, 1997 —
RECONSIDERATION DENIED JUNE 6, 1997.

*Shulman & McBride, Warren S. Shulman,* for appellant.
*Roxann G. Daniel, Solicitor, Russell B. Poole, Assistant Solicitor,* for appellee.